In re **BALTIMORE EMERGENCY SERVICES II, LLC; Phyamerica Physician Group, Inc.; ECS Holdings, Inc.; Scott Medical Group, LLC, et al., Debtors,**

**Sterling Healthcare, Inc., and The Official Committee of Tort Plaintiffs Creditors, Plaintiffs,**

v.

**American International Specialty Lines Insurance Company, et al., Defendants.**

Bankruptcy Nos. 02–6–7576–SD to 02–6–7815–SD, 03–5–3267–SD to 03–5–3282–SD, 02–6–7584–SD. Adversary No. 04–2322–SD.

United States Bankruptcy Court, D. Maryland, Baltimore Division.

April 28, 2005.

**154**

See also 334 B.R. 164, 2005 WL 3112742.

Martin T. Fletcher, Baltimore, MD, for debtors.

## ORDER ADOPTING CLARIFYING PROCEDURES FOR PROCESSING MALPRACTICE CLAIMS AGAINST THE DEBTORS' INSURANCE POLICIES

E. STEPHEN DERBY, Bankruptcy Judge.

Upon consideration of the Third Amended Complaint filed by Sterling Healthcare, Inc. ("Sterling"), and joined in by the Official Committee of Tort Plaintiffs Creditors (the "Tort Committee") and the answers thereto, regarding the Alternative Dispute Resolution procedures (the "ADR") approved pursuant to the Order Confirming the Second Amended Joint Plan of Reorganization of Baltimore Emergency Services II, LLC(the "Confirmation Order") and after evidentiary hearings held on March 28, 2005 and April 7, 2005, and oral argument on April 12, 2005, the court makes the following findings.

1. This Court entered the Confirmation Order on December 17, 2003 confirming the Debtors' Second Amended Joint Plan of Reorganization of Baltimore Emergency Services II, LLC and approving the ADR for the resolution of malpractice claims seeking to collect from the applicable aggregate coverage of Debtors' insurance policies; and

2. Pursuant to the sale transactions contemplated by the Confirmation Order, Sterling was assigned the Policies and became the de facto administrator of the ADR; and

3. A number of malpractice claimants have asserted claims against non-debtor physicians entitled to coverage under the Policies (as defined below in the Ordered

paragraphs), but those claimants have not sued the Debtors or participated in the ADR to date; and

4. Disputes have arisen about the proper interpretation and application of the ADR, as to whether certain claimants were required to participate in the ADR, and whether notice thereof was sufficient, all as adduced at the hearings on this matter; and

5. In October 2004, American International Surplus Lines Insurance Company ("AISLIC") filed an Emergency Motion To Clarify And Enforce Order Approving Purchase Of Insurance And Order Confirming Second Amended Plan Of Reorganization and indicated, among other things, that it appeared that insufficient aggregated policy proceeds would be available to pay all remaining malpractice claims; and

6. Disputes exist concerning the intent of the ADR in view of the insufficient aggregate available coverage under the Policies; and

7. Sterling filed a complaint against the Insurers (as defined below in the Ordered paragraphs) and all claimants who could seek to access the aggregate limits of the Policies. The complaint sought a declaration to clarify the ADR, its application to malpractice claims, and the availability of insurance for such claims, and sought an injunction barring the Insurers from making any payment of insurance proceeds from the Policies except in accordance with this Court's orders; and

8. The Tort Committee agreed that the relief sought by Sterling was appropriate and joined the complaint as a plaintiff; and

9. On December 8, 2004, this Court entered a temporary restraining order barring any payment from the remaining aggregate limits of the Policies pending resolution of the matters raised in the complaint; and

10. On December 17, 2004, this Court entered a preliminary injunction continuing its previous temporary restraining order; and

11. The remaining aggregate limits under Policies will be insufficient to pay all remaining claimants in full; and

12. Pursuit of the remaining aggregate limits of the Policies outside of the ADR would endanger the ability of persons covered under the Policies to present a defense paid for with insurance proceeds, and would endanger the ability of all legitimate claimants to access an equitable share of the aggregated insurance proceeds of each of the Policies; and

13. The Court finds that a crisis exists with respect to the pending claims and the amount of aggregate proceeds of each Policy available under the ADR or otherwise; and

14. The periods of the Policies have expired and the crisis requires immediate redress such that claimants, insured physicians, other insureds, and the Insurers have clarity with respect to the resolution and payment of malpractice claims under the ADR and the Policies; and

15. Sterling and certain other parties have a dispute concerning the potential liability of Sterling in connection with the funding of the Policies, but resolution of that dispute will not take place for some period of time and therefore will not redress the immediate crisis presented by the differing interpretations of the ADR or the insufficiency of insurance proceeds under the Policies; and

16. Sterling and the constituents of the Tort Committee will be irreparably harmed if relief is not granted in that failure to clarify the ADR and issue appropriate permanent injunctions would cause a race to the courthouse, which would in

turn cause an inequitable distribution of Policy proceeds, and result in wasteful litigation; and

17. Public policy strongly favors an equitable division of available aggregate insurance proceeds and the prompt resolution of claims; and

18. The ADR was intended to achieve an equitable division of available aggregate insurance proceeds by providing a mechanism for the prompt resolution and payment of all claims potentially covered by the Debtors' insurance policies; and

19. The Court has jurisdiction over the Policies, their proceeds, all Defendants and their claims.

Based on the findings set forth above and the conclusions in a Memorandum Opinion Clarifying and Interpreting Confirmation Documents filed herein, and for good cause shown, it is, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED,** that the requests of Sterling and the Tort Committee for Proposed Clarifying Procedures for Processing Claims against the Debtor's Insurance Policies are granted, as provided herein; and it is further

**ORDERED,** that the ADR be, and the same hereby is, clarified and conformed to the provisions set forth in *Exhibit A* attached hereto (the "Clarifying Procedures"); and it is further

**ORDERED,** that, except as provided herein, all holders of Malpractice Claims (as defined in the ADR) are permanently enjoined from seeking to collect or collecting upon any judgment or settlement against the personal assets of any physician who was employed or contracted by a Debtor and who is an additional or named insured under an insurance policy of the Debtors which covers claims for medical malpractice, other than seeking to collect any judgment or settlement against any non-Debtor insurance policies under which any such physician is a named insured or an additional insured or against any state fund under which any such physician is covered; and it is further

**ORDERED,** that if the permanent injunction would in any way impair the rights of the holder of a Malpractice Claim to proceed against a non-Debtor, or if there are other reasons which a holder feels would require a lifting of the permanent injunction, then such holder of a Malpractice Claim may seek relief from the permanent injunction by filing a motion in the Bankruptcy Court, with notice to Sterling and any affected physician or other party, setting forth the justification for such relief, and it is further

**ORDERED,** that, nothing herein is intended to expand in any way the rights of the Malpractice Claimants, the Debtors, Sterling or any other party in interest; and it is further

**ORDERED,** that notwithstanding anything to the contrary in their respective Policies (as defined below) AISLIC and Everest Indemnity Insurance Company ("Everest") (together the "Insurers") are permanently enjoined from making payments pursuant to the Policies, to any person or entity except in accordance with the terms of this Order and the ADR as clarified by the Clarifying Procedures; and it is further

**ORDERED,** that nothing in this Order or the ADR as clarified by the Clarifying Procedures shall increase the obligations of the Insurers; and it is further

**ORDERED,** that the Insurers shall make payments covered by their Policies only in accordance with the terms of this Order, including payments for the defense costs, indemnity costs, and costs of the monitor established by the ADR. In pay-

ing the aggregated insurance proceeds in accordance with the ADR procedures and this Order going forward, the Insurers will not be breaching any duty or obligation under the terms of the Policies; and it is further

**ORDERED,** that if any person or entity makes a claim, not in accordance with this Order and/or not pursuant to the ADR, for coverage or payment under the Policies, the Insurers are directed not to pay such claim and are further directed to provide a copy of this Order to such person or entity; and it is further

**ORDERED,** that this Order and the Clarifying Procedures clarify the ADR with respect to distributions from two insurance policies: AISLIC 4762435 and Everest 4700000013–021 (the "Policies"); and it is further

**ORDERED,** that nothing contained in this Order or the Clarifying Procedures shall affect, resolve or have any preclusive effect whatsoever upon any other disputes, including without limitation any funding obligations for medical malpractice claims or otherwise which Sterling allegedly may have, any alleged liabilities of Sterling, whether Sterling has acted properly in choosing to administer claims against any of the Policies as opposed to another policy, or otherwise, and all of the parties' rights (including Sterling's rights) to such matters are fully reserved; and it is further

**ORDERED,** that nothing in this Order shall impose any new liabilities on the Debtors or prejudice the rights or defenses of any Debtor; and it is further

**ORDERED,** that except as expressly set forth in this Order or the Clarifying Procedures, nothing contained in this Order or the Clarifying Procedures shall

modify any of the terms, conditions, effects, or rights granted by the Plan, the Confirmation Order, or any of the Plan Documents attached to the Confirmation Order; and it is further

**ORDERED,** that this Court shall retain jurisdiction over the terms of this Order, the Clarifying Procedures, the ADR and the Policies.

## EXHIBIT A

*Clarifying Procedures For Processing Malpractice Claims Against the Debtors' Insurance Policies AISLIC 4762435 and Everest 4700000013–021*

### Participation in the Insurance Proceeds

- The opportunity to participate in the ADR Procedures (as hereinafter defined) will be opened to all holders of Malpractice Claims, and hospitals or other healthcare facilities that contracted with a Debtor (the "Hospitals"), that have asserted or could assert a claim for reimbursement, contribution or indemnity against the Debtors with respect to such claim or whose claims are covered by the Policies, as defined in the Order Adopting Clarifying Procedures (the "Order") and described hereafter.

- From the date of approval of these Clarifying Procedures forward, all holders of Malpractice Claims[1] and Hospitals must participate in the ADR in order to participate in distributions from the insurance proceeds of policies AISLIC 4762435 and Everest 4700000013–021 (the "Policies"), except as specifically provided in these Clarifying Procedures.

- A holder of a Malpractice Claim who is a party to a state court litigation which

1. All capitalized terms herein shall have the same meaning as ascribed to them by the

ADR approved by the Confirmation Order, unless otherwise defined herein.

is, as of April 27, 2005, scheduled for trial may continue to proceed with the state court trial to liquidate such claim.

- Holders of Malpractice Claims must file with the Administrator, if they have not already done so, a Verification of Loss Form before the New Bar Date (as defined below) to participate in distributions from the Policies, but need not take further action under the ADR to preserve their rights to the Policies.

### Notice of New Bar Date

- The time line for opting into the Alternative Dispute Resolution Procedure approved by the Order Confirming the Second Amended Joint Plan of Reorganization of Baltimore Emergency Services II, LLC and Its Affiliated Debtors (the "ADR") shall be extended to 120 days after the date of the Notice (as defined below) is mailed (the "New Bar Date").

- The filing of a Proof of Claim shall not be necessary to participate in the ADR and the proceeds of the Policies.

- The Bankruptcy Court will mail to all known claimants a notice (the "Notice"), a Verification of Loss Form, and a copy of the Order, which shall give the claimant 120 days to opt into the Plan ADR by filing a Verification of Loss Form. The Notice shall set forth with specificity the date certain of the New Bar Date by which claims must be filed and the address for filing the Verification of Loss Form with the Administrator. The Notice shall be prepared by Sterling, in a form reasonably acceptable to the Tort Committee, and filed with the Court for mailing to all parties as required in this paragraph. In addition, Sterling,

in consultation with the Tort Committee, shall file with the Court the proposed mailing list of parties to whom the Notice is to be sent.

- Nothing in the Order or these Clarifying Procedures shall require the filing of Verification of Loss Form by a party having submitted a Verification of Loss previously. The Notice shall so state.

### Claims of Hospitals to Insurance Coverage under Confirmation Order Paragraph 8

- Hospitals subject to a claim based, in any part, upon acts or omissions of a physician, doctor, Debtor, Sterling, or party contracting with any of them ("Vicarious Liability"), must file a Verification of Loss Form with the Administrator by the New Bar Date in order to participate in the proceeds of the Policies. In the event that a holder of a Malpractice Claim has also filed a Verification of Loss Form for the same claim, the described Forms shall be consolidated so that only one Initial Distribution and, if applicable, one Final Distribution, both as described below, (rather than two) of proceeds from the Policies is preserved for such claim.

- Hospitals shall not be required to take further steps in the ADR beyond filing a Verification of Loss Form to obtain a right to participate in Distributions as described herein. Further, the Form being filed by a Hospital may be in limited form, identifying the name of the Hospital, the name of the claimant(s), the address of the Hospital and/or its counsel, and a brief summary of the known allegations against the Hospital.

- Where a holder of a Malpractice Claim participating in the ADR and a Hospi-

tal have each filed Verification of Loss Forms related to the same claim, the Hospital and any counsel of record for the Hospital in the bankruptcy case will be served with a copy of all ADR documentation sent out by Western Litigation, Sterling, or Debtors, or submitted by the holder of the Malpractice Claim, related to the claim. Further, the Hospital shall have the right, but not obligation, to have its counsel participate in any stages where formal negotiations, mediation, or arbitration are carried out between the parties, and will be given reasonable advance notice of such formal negotiations, mediation, or arbitration under the ADR.

- In the event only a Hospital files a Verification of Loss Form for an incident, and the Malpractice Claimant does not also file a form, the Administrator shall allocate an Initial Distribution and, if applicable, a Final Distribution for the claim just as if the holder of the Malpractice Claim had fully complied with the ADR.

- The timing and amount of all payments to Hospitals shall be handled as set out later in these Clarifying Procedures.

- Nothing in the Order or the Clarifying Procedures shall expand the liability of Hospitals for claims of Malpractice Claimants. Participation in the ADR or these Clarifying Procedures by a Hospital shall not be an admission of any liability by the Hospital.

### Administration

- Sterling shall continue to serve as the Administrator under the ADR.

- Proceeds of the Policies shall continue to be held by the respective Insurer (as defined in the Order) until distribu-

tions are authorized by the Administrator.

- All distributions shall be made upon submission of a distribution request form to the Insurer by the Administrator.

- Distributions shall be made in accordance with the ADR, as clarified by the procedures set forth herein.

- Sterling shall file monthly status reports with the Bankruptcy Court.

### Monitor

- The Tort Committee may, with the consent of Sterling (which consent shall not be unreasonably withheld) appoint an ADR Monitor.

- The ADR Monitor, if appointed, shall enter into a confidentiality agreement with Sterling (which confidentiality agreement shall be reviewed and approved by the Tort Committee prior to execution, with consent of the Tort Committee not to be unreasonably withheld).

- The ADR Monitor shall have access to all records relating to Malpractice Claims, defense costs, the ADR and processing of claims through the ADR. The ADR Monitor shall have party in interest standing with regard to all issues involving the ADR or this Order.

- The ADR Monitor shall be paid by the Administrator who may be reimbursed from the remaining aggregate limits of the Policy to which the monitor's services relate.

### Process

- The ADR does not prohibit claimants from proceeding outside the ADR against physicians who are not covered by the Policies.

- Holders of Malpractice Claims not seeking recovery from the Policies or from the personal assets of physicians named as insureds or additional insureds under the Policies, do not have to participate in the ADR Procedure and may proceed in a court of appropriate jurisdiction.
- Those claimants currently participating in the ADR shall continue to liquidate their claims in accordance therewith.
- Those claimants who are not currently participating in the ADR Procedures shall be given the opportunity to participate in the ADR Procedures by filing a Verification of Loss Form with the Administrator prior to the New Bar Date. If a holder of a Malpractice Claim does not participate in the ADR Procedures as clarified herein, he/she is barred from recovery of any proceeds of the Policies, the Debtors or their Estates and is barred from seeking any recovery from the personal assets of a physician who is an additional or named insured under the Policies, except to the extent set forth above.
- Once any claims are liquidated or settled under the ADR Procedures, the claimant shall be entitled to payment as outlined below.

**Payment on Claims from Policy Proceeds For Everest Policy (021) and AISLIC Policy (435)**

*Defense Costs*

- For Malpractice Claims under AISLIC Policy (435), defense costs incurred after April 27, 2005 will be paid in the ordinary course in full from the Initial Distribution and any Final Distribution to which they relate. Defense costs incurred on or prior to April 27, 2005 and which remain unpaid as of the date of the entry of this Order shall be paid *pro rata* from the Initial Distribution available to the underlying Malpractice Claim from the insurance proceeds once the claim is liquidated or settled. Thus, for example, should the Initial Distribution be $100,000 and the claimant have a $200,000 liquidated claim, and defense costs exist of $100,000 incurred prior to April 27, 2005 and unpaid as of the date of entry of the Order approving these procedures, the claimant shall receive a 66.6 % ultimate recovery ($100,000/$300,000), or $66,667.00, and the defense costs incurred prior to April 27, 2005 will be paid at 33.3%, or $33,333.00. They will also be paid pro rata on any Final Distribution (as calculated below) on the claim.
- Defense costs under Everest Policy (021) shall be paid as claims expenses in accordance with the terms of the Policy from the Initial Payment and any Final Distribution to which they relate.

*Post–Petition Claims*

- The holder of a Post-petition Malpractice Claim (as identified in Section I(F) of the Plan ADR) covered by one of the Policies, and a Hospital with a Vicarious Liability claim with respect thereto, who seeks to receive payment from a Policy must file a Verification of Loss Form on or before the New Bar Date, unless it has already done so. If a Verification of Loss Form is not timely submitted by the holder of a Post-petition Malpractice Claim or Hospital, as the case may be, it is forever barred from participating in distributions from the Policies. If a Verification of Loss Form is timely

submitted by the holder of a Post-petition Malpractice Claim or Hospital, as the case may be, it will be included for payment in the Initial Distribution procedure and any Final Distribution, if applicable, as if it were a prepetition Malpractice Claim.

- Post-petition claimants, and hospitals with post-petition claims, may pursue other remedies as well as participating herein, and the rights of each to proceed against third parties are unaffected by the ADR, these Clarifying Procedures, and the Order.

### Claims Made Post–Closing

- Payment of prepetition Malpractice Claims and Post-petition Malpractice Claims covered by the AISLIC Policy (435) that were made on or after February 1, 2004 shall be subordinated to the payment of such claims made before February 1, 2004. Any rights of these claimants to proceed against malpractice tail insurance provided by Sterling and against Sterling are not impaired.

### Pre–Petition Claims

- Upon settlement or liquidation of a claim against an insured the claimant shall be entitled to an Initial Payment.
- Within 30 days after the liquidation of a claim, the Administrator will notify the appropriate Insurer of such liquidation and authorize distribution from the Policy on the claim.
- The Initial Distribution for a claim shall be equal to the aggregate proceeds remaining under the applicable insurance policy as of the Preliminary Injunction Date (the "Available Proceeds") divided by the number of claims against that policy as of the New Bar Date. For example, if the Available Proceeds are $5 million and there are 100 claims, the Initial Distributions will be $50,000. Defense costs shall be deducted from the Initial Distribution to the extent provided herein and the remainder shall be available to be paid to the holder of the Malpractice Claim or the party claiming entitlement to the Insurance Proceeds, such as Hospitals, as the facts may indicate, but not to exceed the liquidated amount of the claim (the "Initial Payment").

- If the liquidated amount of the claim is more than the amount of the Initial Payment, such claimant shall receive the Initial Payment within 60 days. Such claimant shall further receive a Final Distribution, which shall be a pro rata portion of the proceeds available after all Initial Payments and defense costs have been paid as provided herein.

- If the liquidated amount of the claim is less than the amount of the Initial Payment, the claimant shall receive no more than the amount of the settlement. The difference between the Initial Payment and the liquidated amount shall be turned over to the pool of funds that will be available for Final Distribution unless there is also a Hospital claim for the same act in which case these funds shall remain available to pay the Hospital claim as described below.

- Once all claims have been paid the Initial Payment, the Available Proceeds will be recalculated as of that date (the "Supplemental Proceeds"). All open claims will then be paid a pro-rata share of the Supplemental Proceeds (the "Final Distribution"), less applicable unpaid defense costs as provided herein.

- Subsequent to the Final Distribution, the Supplemental Proceeds will be re-

calculated on the 6 month and twelve month anniversary of the Final Distribution Date until December 31, 2007. If there are no Supplemental Proceeds available, then no further payments will be made pursuant to this Clarifying Procedure. If additional Supplemental Proceeds become available, all open claims will then be paid a pro rata share of the additional Supplemental Proceeds less applicable unpaid defense costs as provided herein.

*Hospital Claims*

- In the event that a Hospital has filed a Verification of Loss Form and a claimant has not, the Hospital shall be entitled to the same payment as described above on account of the claim.
- In the event that a Hospital and a Claimant have both filed a Verification of Loss Form, then the claim shall be considered as one for purposes of calculating the Initial Distribution and Initial Payment, as well as the Final Distributions, if any, as described above.
    - If the Claimant settles for an amount less than the Initial Payment, then the remainder shall be available as payment to the Hospital unless i) the Hospital has received a release from the Claimant as part of the settlement or ii) the claims against the Hospital do not include a claim based on Vicarious Liability.
    - If a Hospital does not liquidate its claim in a state court action, or is unable to determine a value for the amount attributable to Vicarious Liability, the liquidated value of the claim for the purposes of distribu-

tion shall be the lesser of i) the amount of the liquidated claim if the holder of a Claim has participated in the ADR or ii) the excess of the Initial Payment over the liquidated amount of the claim.

- Hospitals may liquidate their claim in a state court, in which case such liquidation shall include a liquidated value based solely on the basis of vicarious liability because of actions of the physician.
- In the event that the claimant has chosen not to participate in the ADR and solely sue the Hospital, the Hospital shall be entitled to the entire amount of the Initial Payment up to the liquidated value of its claim based solely on Vicarious Liability on the part of the Hospital. If there is no liquidated value for the Vicarious Liability portion of the Hospital's claim, the parties agree to participate in the Arbitration portion of the ADR procedure and agree that the findings of the arbitration shall be final on both parties.

*Numerical Example for AISLIC Policy Distributions* [2]

- Assume there are 6 claimants against a policy that has Available Proceeds of $1,200,000.
- The Initial Distribution for each claim would be $200,000.
- Claimant 1 and Claimant 2 settle claims in the amounts of $1,000,000 and $10,000 respectively. In the Case of Claimant 1, there were post April 27, 2005 defense costs of $50,000 and in the case of Claimant 2, there were defense costs of $10,000. The Initial

---

**2.** For purposes of simplicity in this example, "Defense costs" include both the portions required to be paid for Ordinary Course Defense Costs and *pro rata* defense costs. These examples assume claims were filed before February 1, 2004.

Payment to Claimant 1 would be $150,000 ($200,000 minus $50,000) and the Initial Payment to Claimant 2 would receive $10,000 in full satisfaction of his claim. The case of claimant 1 would turn nothing over to the pool for remaining claims, while the case of claimant 2 would turn over $180,000 ( [$200,000–$10,000] minus $10,000) to the pool for remaining claims.

- Claimant 3 and Claimant 4 settle claims in the amounts of $500,000 (plus $75,000 in defense costs) and $200,000 (plus $50,000 in defense costs) respectively. Claimant 3 would receive $125,000 as an Initial Payment and Claimant 4 would receive $150,000. Neither of these cases would turn any monies over to the pool for remaining claims.

- Claimant 5 has had its Verification of Loss consolidated with the Verification of Loss filed by a hospital. Claimant 5 settles for $90,000, and there are defense costs of $10,000. Claimant 5 would receive $90,000 as an Initial Payment. Claimant 5 does not release the hospital, but continues to pursue claims against the hospital including vicarious liability for the physician's actions. At this point, no money is returned to the pool, because the additional $100,000 allocated to the claim continues to be held as an Initial Distribution for the hospital. The claim against the hospital is liquidated for $450,000, and the hospital has post April 27, 2005 defense costs of $50,000. The Hospital would receive the remaining $50,000 of Initial Distribution available for the Claim and the defense costs would be paid in full.

- Claimant 6 fails to participate in the ADR, and is pursuing claims against the hospital including vicarious liability for the acts of a physician. Based on these Clarifying Procedures, the claimant is precluded from pursuing the physician's personal assets, and is no longer entitled to proceeds of the Policies. The hospital files a Verification of Loss preserving the right to proceeds for the claim, resulting in a $200,000 Initial Distribution available for the claim. The hospital settles the claims for $40,000, and has $10,000 in defense costs. The hospital receives an Initial Payment of $50,000, and the remaining $150,000 is returned to the pool for allocation to other claims.

- The pool for Final Distributions would contain $330,000 which would be divided on a *pro rata* basis to Claimants 1, 3, 4, and the hospital asserting claim 5. Thus, on the Final Distribution Date the total of unpaid Claims equals $1,665,000 with Claimant 1 being 50% of that amount, Claimant 3 being 23%, Claimant 4 being 3% and the Hospital being 24%. Claimant 1 would get a Final Distribution of $165,000, Claimant 3 would get $76,000, Claimant 4 would get $10,000 and the Hospital would get $79,000.

- In the event of additional funding for the pool, or additional monies becoming available for the pool, each claimant would continue to be entitled to a *pro rata* allocation, up to the full amount of its claim, and upon satisfaction of the claim, any additional funding would return to the pool for further allocation on a *pro rata* basis to the remaining claims.

*Miscellaneous*

Except as set forth herein, the ADR shall remain in full force and effect.